Ezekiel J. Bridges et al. *v.* Willis G. Winters et al., Administrator.

Ezekiel J. Bridges *et al. v.* Willis G. Winters *et al.,* Administrator.

1. PROMISSORY NOTES: ALTERATION OF INSTRUMENTS: WHAT IS. — When any alteration is made which causes the instrument to speak a language different in legal effect *from that which it originally spoke,* it is a material alteration.

2. SAME: CASE IN JUDGMENT. — The note sued on in this case bears date 28th day of May, 1859; the makers promise to pay $1,000, twelve months after date; consideration "loaned money." The legal liability of the makers is not changed by inserting the words "in gold:" such alteration *is immaterial.*

3. SAME: SAME: SAME. — The law, at the date of the note, *without* these words, fixed the liability of the makers and determined the sort of funds it should be paid in; the makers could not discharge it in any other currency than gold, 25th day of May, 1860; the alteration only *expresses* what the law *implies. Falmouth* v. *Roberts,* 9 M. & W. 469; 5 Mass. 540; 6 ib. 519. A different rule prevails where the alteration has been made fraudulently or with fraudulent intent, or made by the payee.

4. ALTERATION: SPOLIATION: MUTILATION: DIFFERENCE IN. — Alteration is an act done upon the paper, by which its meaning or language is changed in a material point, and by the party entitled to the instrument, either by writing or erasing; if done by a stranger without the participation of the party interested, it is a spoliation or mutilation.

5. PRINCIPAL AND SURETY: RELEASE OF: NOTICE TO SUE, &c. — Notice by a surety on a promissory note, to the holder thereof, under art. 1, p. 361, Rev. Code, must be in writing; otherwise no release.

6. HIGH COURT WILL NOT REVERSE FOR TECHNICAL OBJECTIONS ALONE. — High Court will not disturb judgments of the inferior courts when substantially correct, although obnoxious to technical objections which do not prejudice the interest of the plaintiff in error.

ERROR to the Circuit Court of Attalla county. Hon. J. A. P. Campbell, judge.

Defendants in error commenced this suit in the Circuit Court of Attalla county. Declaration in usual form, in assumpsit, filed March Term, 1867, on a promissory note, of which the following is a copy: —

"$1000.   Twelve months after date, we, or either of us, promise to pay John Winters or bearer the sum of one thousand dollars, loaned money, in gold, with interest at ten per cent per annum : this 26th day of May, 1859.

"Robert M. Harris.
Ezekiel J. Bridges.
Jesse G. Kimbrough.
A. S. Hamilton.
James Hubbert.

"April 23d, 1862, received thirty-five dollars on the within note; July 28th, received twelve dollars."

The following pleas were filed, viz. :—

1. General denial by all the defendants.

2. Special plea, by defendants Bridges, Hamilton, and Hubbert, alleging that they signed the note sued on as sureties for their co-defendant, Harris, who was the principal debtor; that after the note became due, they, as sureties, in pursuance of the statute, gave notice to plaintiffs to sue on said note; that Harris, the principal, was then a resident of Attalla county; that plaintiffs failed to commence such suit at the first term of the Circuit Court next succeeding said notice, which term began and was holden after thirty days from the date of said notice; that at the time of giving this notice, Harris, the principal, owned, and had in his possession, eleven bales of cotton, worth $1,600, sufficient to discharge the note and interest; that the sureties therefore claim to be discharged; that the plaintiffs, disregarding the notice, refused to bring suit as requested, but afterwards, on the        day of        1866, agreed with Harris, the principal, that he (Harris) might ship and sell his said cotton, which he did in the spring of 1866; a part of the agreement was that Harris should pay one half of the note in the spring of 1866, and the balance in the fall of same year; that these defendants' sureties objected at the time to this agreement, and so notified plaintiffs, and insisted on the cotton being subjected to the payment of the debt, stating that said Harris was in failing circumstances, and if suit was delayed, the sureties would suffer

Ezekiel J. Bridges et al. *v.* Willis G. Winters et al., Administrator.

great prejudice; that suit was delayed and not brought until the March Term, 1867, at which time Harris had become, and then was, and still is, insolvent; wherefore the sureties claim to be discharged.

To this plea plaintiffs filed " Replication and issue in short by consent."

3. Special plea by defendants: That " since they signed and delivered the note sued on, the same has been altered by interlining in the face of said note the words ' in gold;' as they conceive, a material alteration of said note, made without their consent or knowledge, and that the same so interlined is not their act and deed."

4. Defendants gave notice in writing that they would introduce evidence under the general issue, to prove that the note sued on was, after the signing and delivery of the same by them as sureties, changed or altered in a material point of view,— in this, that the words " in gold " were inserted by interlineation after it was signed and delivered, and without their knowledge or consent.

The plaintiffs demurred to defendants' third plea, and assigned following grounds, viz. : —

1. That the plea was not sworn to.

2. That the alteration complained of was not material.

3. For uncertainty, informality, and defectiveness.

This demurrer was sustained by the court at the September Term, 1867, and leave given to answer over.

The following " amended plea " was filed at the same Term of court by the sureties: That the note sued on has been altered in a material part and manner since they signed and delivered the same, without their privity or consent, authority or acquiescence, by interlining the words " in gold " in the face of said note.

This plea was sworn to by all the sureties.

To this amended plea plaintiffs demurred, on the ground that the alleged alteration was immaterial, and did not affect the rights or liability of the parties thereto; that the plea was uncertain in not showing how or where the alteration was made.

This demurrer was also sustained by the court.

The record here shows a "second amended plea" by the sureties, filed Sept. 17, 1867, alleging that they signed the note sued on as sureties for Robert M. Harris; that after its maturity they gave notice personally to the plaintiffs to sure, which they failed to do within thirty days after the notice.

To this plea there is neither replication nor demurrer, and the record shows no disposition of it.

A trial was had on the issues joined on the first and second pleas ; the jury returned, "We, the jury, find for the plaintiffs," whereupon judgment was rendered by the court in favor of the plaintiffs and against defendants, for $1,783 damages, with ten per cent interest and costs.


*Turner, Groves, & Turner* for appellants.

The alteration of the note, as alleged in the pleadings, was not controverted, and, if material, it must be accounted for. 36 Miss. 458.

Inasmuch as gold was then more valuable than silver (in which it might have been received or paid), the alteration is material. It was rather better than paper currency then, and much better now ; and as it was not explained to the court when the alteration was made, it creates a presumption the most unfavorable for the plaintiffs below, that the interlineation was made in 1864, or some other time when gold was exceedingly valuable. Moreover, if the alteration was *fraudulent*, whether material or immaterial, it matters not ; unexplained, it avoids the instrument. 1 Greenleaf's Ev. 750.

It could not have been made without a motive; *obviously* it was not one for the benefit of the appellants, and the appellees sought advantage by it. Of course it was fraudulent, as it was not even attempted to be proven to have been a part of the original contract.

*Contended* — That the notice by sureties to the holders of the note to sue, although required by the statute to be in writing, that the statute was in this respect only directory ; that it was not an indispensable prerequisite that it should be in writing ;

the appellees had actual notice and all the benefits that could have resulted from a written notice.

With reference to fourth error assigned. It was erroneous: 1st. Because the verdict on which it was predicated was merely in general terms for the plaintiff, without specifying any amount; 2d. Because there was nothing in the record to authorize so large a judgment as was entered by the court, of $1,783, but on the contrary that the declaration referred to no note or bill of particulars filed therewith from which to fill up the blank verdict, even had it been right to do so; and, 3d. Because, according to the note, which seems to have been among the papers, the judgment was for $98.12 too much, the note being due twelve months after its date, without any stipulation for interest from ets date.

The verdict of the jury was informal, erroneous, and defective, because it finds for the plaintiff, without specifying any sum, even costs, and for aught that appears, without any evidence to support it. The declaration makes *profert* of none, and the record does not recite that any was introduced.

*J. Niles* for defendants in error.

The alteration of the note sued on, even if made after its execution (of which there is no proof), was wholly immaterial, and in no way affected either the rights or liabilities of the parties thereto. The law implied a payment in gold: all notes of that date, if payable in "dollars," were in law payable in gold dollars. The insertion, then, of the words "in gold" was mere surplusage, and did not change the liability of the makers. There is no proof of any fraud, and none will be presumed in the absence of proof.

The notice to institute suit was not such as is required by the statute. See Code.

As to the verdict: it ascertained the facts. The court then pronounced the judgment. There can be no error in this. The calculation of the amount due being upon a note, was properly made by the clerk. There is no error in the calculation.

SHACKELFORD, C.J., delivered the opinion of the court.

This is an action of assumpsit, instituted to the March Term, 1867, of the Attalla Circuit Court, upon a promissory note, of which the following is a copy, viz. : —

"$1,000. Twelve months after date, we, or either of us, promise to pay to John Winters, or bearer, the sum of one thousand dollars, loaned money (' in gold '), with interest at ten per cent per annum : this 26th day of May, 1859. ·

> "ROBERT M. HARRIS.
> EZEKIEL J. BRIDGES.
> JESSE G. KIMBROUGH.
> A. S. HAMILTON.
> JAMES HUBBERT."

To the declaration in this case the plaintiffs in error filed the general issue and the special pleas.

The second special plea is in substance : That on the    day of January, A.D. 1866, the sureties to said note, gave notice to the administrators of the estate of John Winters, deceased, "in person," to institute a suit against the principal of said note, to the next March Term, 1866, of said court, and that the administrators failed to institute said suit against Robert M. Harris, "the said court being holden after thirty days from the giving of the said notice."

Replication and issue in short to this plea.

The *third* plea was to the effect that the note had been altered in a material part after they had signed it, by inserting the words "in gold" in the body of the note, without their consent and knowledge. This plea was sworn to. Defendants in error demurred to it, and the demurrer was sustained by the court, and judgment of *respondeat ouster*.

The *third* amended plea was sworn to, which is in substance as follows : The plaintiffs in error, claiming to be sureties on said note, state that the note was altered in a material part and manner since they signed and delivered the same, without their privity or consent, authority or acquiescence, by inserting the words "in gold" in the face of the note.

Ezekiel J. Bridges et al. *v.* Willis G. Winters et al., Administrator.

This plea was also demurred to by the defendants in error.

Causes of demurrer assigned are : —

" 1st. That the alleged alteration was an immaterial one, and did not affect the rights or liabilities of the parties thereto.

" 2d. That it is uncertain, in not showing how or when said alteration was made."

This demurrer was sustained by the court, and judgment *quod recuperet.*

After the judgment, the issue on the second plea was submitted to the jury, and verdict for the plaintiffs below.

The case is here for revisal by writ of error.

There are five assignments of error made by the plaintiffs in error.

We shall notice them in their order.

The first is that the court erred in sustaining the plaintiffs' demurrer to defendants' third plea.

The demurrer admits the allegations of the plea. What are they ?

That the words " in gold," as they appear in the note sued upon and set out herein, were inserted after the execution and delivery of the note to the deceased John Winters ; and that the alteration was done without their " privity or consent, authority or acquiescence."

Admitting, for the purposes of this discussion, that the alteration was made by John Winters, the payee of the note, is it such an alteration as will vitiate the note ?

The rule is well settled, that where any alteration is made which causes the instrument to speak a language different, in legal effect, from that which it originally spoke, is a material alteration.

Does the alteration in the case before us come within this rule ?

We think it does not.

The note bears date on the 25th day of May, 1859 ; the drawers promise to pay $1,000 twelve months after the date thereof, with ten per cent interest, the consideration being for " loaned money."

The legal liability of the plaintiffs in error, on the note in question, seems to us the same without the words " in gold " inserted, as with them.

The law, at the date of this note, fixes the legal liability of the plaintiffs in error as to the kind of funds or money this note should be paid in. They admit the consideration was for loaned money to Harris, the principal.

Could Harris legally discharge or pay the money due on the note on the 25th day of May, 1860, in any other currency than gold? He could not.

View this alteration as an alteration by John Winters, it only expresses what the law implies, and only shows what the law would do if resistance was made to the payment of the note ; the alteration, then, if we are right in our views of the rule, was an immaterial one, not changing in the least the legal liability of the parties to the note, *Falmouth* v. *Roberts*, 9 M. & W. 469 ; 5 Mass. 540 ; 6 Mass. 519, and the law itself would supply, 15 Pick. 239 ; 3 Ohio Stat. 445.

The rule is different when the alteration has been made fraudulently, or with a fraudulent intent; but there was no allegation in this plea that the alteration was made with such intent, or that it had been made by Winters, the payee.

It is manifest that the insertion of the words "in gold " was inserted to show the kind of money loaned to Harris, the principal, and was to create a higher security, or to fix a greater liability to the parties to the note.

The plaintiffs in error do not show by their plea that any other kind of funds were loaned to Harris than gold.

The proof to the contrary, if any existed, was in the possession of the plaintiffs in error at the filing of their plea; and their failure to allege that any other kind of funds were loaned, is conclusive against them that it was gold loaned.

If we are right in this view of the facts touching the consideration of the note, the payee, if he made the alteration, was only supplying an omission which was not material, and could in no wise affect the rights or liability of the plaintiffs in error upon the note.

Another view of this question : There is a distinction to be observed between an *alteration* and a *spoliation* of an instrument, as to the legal consequences.

An alteration is an act done upon the instrument by which its meaning or language is changed.

If what is written upon, or erased upon an instrument, has no tendency to produce this result, or to mislead any person, it is not an alteration. This term is applied when the act is done by the party entitled to the instrument.

But the act of a stranger, without the participation of the party interested, is a mere spoliation or mutilation of the instrument, not changing its legal operation, so long as the original writing remains legible.

There is no allegation in the plea in question that the insertion of the words " in gold " into the note was made by the deceased payee.

These words may have been inserted by a stranger. If this alteration was material, and was shown by the plea to have been done by the deceased, it would have been repugnant to all principles of justice for the court to have overruled the demurrer to this plea, it being beyond the power of the administrator of the deceased payee to explain how, when, or by whom the alteration was made.

We concur with the learned judge in his view of the legal effect of the allegations of the plea in question, and see no reason to disturb the judgment or the demurrer.

The second assignment is disposed of by the disposition of the first.

The third assignment is that " the court erred in excluding the testimony of the defendants, as stated in the record," in support of the issue joined on the *second* special plea.

During the progress of the trial, the plaintiffs in error introduced James Hubbert, one of the drawers of the note, who testified in substance that he, as well as all the sureties on the said note, signed the same as such for R. M. Harris, principal; that, on or about the 1st of January, A.D. 1866, he called upon Willis G. Winters, one of the plaintiffs, and administrator of

John Winters' estate, and asked if the said note had come into his hands as administrator, and that he admitted it had; and that, as one of the securities, he notified Willis G. Winters, as administrator, that he wanted him to proceed, to make the money due on said note out of R. M. Harris, the principal; that said notice was personal and verbal; and that said notice was given about thirty days before the next ensuing term of the Circuit Court of said county of Attalla; and that said Harris resided in said county, and had in his possession from seven to nine bales of cotton, worth forty cents per pound.

The testimony of Bridges, one of the plaintiffs in error, was also given: it was to the same effect.

A motion was then made by the defendants in error to exclude the foregoing testimony from the jury.

Which motion was sustained, and the testimony excluded.

Exceptions to this ruling of the court were taken and allowed.

The ruling of the court in excluding this testimony from the jury is made the ground for the third assignment of error.

This testimony was properly excluded from the jury; the statute requires the notice from sureties, to the holder of a note, to sue the principal, or all the parties, to be in writing. Rev. Code, p. 361, art. 1.

Consequently the verbal notice was a nullity, and the court below committed no error in excluding this testimony from the jury.

The plea was demurrable, and should have been demurred to.

The fourth assignment of error is that " the court erred in entering up judgment for the plaintiffs for the sum of one thousand seven hundred and eighty-three dollars for their damages, with ten per cent interest per annum, &c."

This assignment is not well taken, because there is no statement accompanying the record, showing what the judgment should be, in compliance with Rule No. 35 of this court. Without such statement no notice will be taken of any error in the amount of a judgment.

The fifth assignment of error is " that the verdict of the jury was informal, erroneous, and insufficient."

The verdict of the jury, as set out in the record, is in these words : " We, the jury, find for the plaintiffs."

The issue submitted to the jury was upon the *second* plea of the plaintiffs in error, — that they had given notice, &c., to institute suit against the principal, Harris.

The verdict of the jury, after the exclusion of the testimony of Hubbert and Bridges by the court, was correct.

It clearly had reference to the issue joined on the second plea.

There was no necessity for a verdict sounding in damages, although the record shows that the issue on the plea of non assumpsit was also submitted to the jury.

Their plea of non assumpsit was virtually abandoned by plaintiffs in error, by their admissions in their *third* special plea, to which the demurrer was sustained by the court previously.

The judgment of the court was rendered upon the calculation of the clerk, and entered in favor of the defendants in error.

This judgment is substantially correct, although obnoxious to technical objections, which do not prejudice the interests of the plaintiffs in error.

Upon the whole, we see no reason why the judgment of the court should be disturbed.

Let the judgment be affirmed.

PEYTON, J., dissented.