[No. 14171. En Banc. December 13, 1917.]

BETTY EDWARDS, *Appellant*, v. LYDIA THOMPSON *et al.*,

*Respondents.*[1]

ALTERATION OF INSTRUMENTS—ACTS OF STRANGER—"SPOLIATION"—
EFFECT. A delivery to an attorney of a mortgage for the sole pur-
pose of filing it for record does not make him the agent of the
mortgagor, with authority to make alterations by inserting an omit-
ted description, such insertion being a spoliation by a stranger which
does not affect the validity of the mortgage.

REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE. Where, by mu-
tual mistake, a description of two lots was omitted from the mort-
gage, reformation of the instrument will be granted to make it ex-
press the agreement and intent of the parties.

Appeal from a judgment of the superior court for Clallam
county, Ralston, J., entered December 22, 1916, upon find-
ings in favor of the defendants, in an action for equitable
relief, tried to the court. Affirmed.

*Edward Judd*, for appellant.

*A. W. Buddress*, for respondents.

WEBSTER, J.—The respondents W. C. Geist and Augusta E.
Geist, husband and wife, and A. H. Thompson and Lydia
Thompson, husband and wife, who are the officers and owners
of the capital stock of the Geist-Thompson Company, a cor-
poration, reside at Port Angeles, Washington, and prior to
May 4, 1916, held, in the name of that corporation, the title
to lots 10 and 11, in block 38, in Original Townsite of Port
Angeles, Clallam county, and lots 1 and 2, in block 8, of tide-
lands of the first class, east of Laurel street, in front of the
city of Port Angeles, Clallam county, Washington, together
with certain personal property in the city. The appellant,
Betty Edwards, who was then Betty Garrett, she having
married E. O. Edwards on July 18, 1916, was the owner of

[1]Reported in 169 Pac. 327.

certain real property located at 512 Pontius avenue, Seattle, Washington.

On April 26, 1916, E. O. Edwards, as the agent of Betty Garrett, the appellant, made an offer in writing on her behalf to the respondents to exchange for their property in Port Angeles, above described, her Seattle property at 512 Pontius avenue, the appellant to give respondents, in addition to the exchange of the Seattle property, the sum of $1,200 in cash, and her notes aggregating the sum of $4,000, the notes to be secured by a mortgage on the Port Angeles property to be conveyed to the appellant. The offer was subject to acceptance or refusal by the respondents within five days from the date thereof. Within the time limited, the offer was accepted in writing by the respondents, whereupon the appellant paid to respondents the sum of $100 to bind the bargain, and abstracts of title to the parcels of land involved in the exchange were prepared and furnished by the respective parties.

On May 4, 1916, the parties met by appointment in the office of Wm. B. Ritchie, an attorney of Port Angeles, to complete the transaction in accordance with the terms of the offer and its acceptance. At this time Ritchie prepared, and the respondents executed, deeds and bill of sale for the Port Angeles property to the appellant; also, there was prepared by Ritchie, and executed by appellant, a deed for her Seattle property, three promissory notes aggregating the sum of $4,000, and a mortgage to respondents Lydia Thompson and Augusta E. Geist to secure the payment of the indebtedness evidenced by the notes. The instruments affecting the titles to the property were acknowledged before a notary; however, the matter was concluded hastily, the papers not being read aloud, and no delivery was made at that time.

On May 8, 1916, E. O. Edwards, representing the appellant, W. C. Geist and Wm. B. Ritchie met at a bank in Seattle, at which time the balance of the $1,200 cash payment was made to Geist by Edwards and the instruments theretofore

executed were delivered to the respective parties, except that the mortgage was given to Ritchie by Edwards with instruction not to deliver the same to Geist or any one until after it was filed for record with the county auditor of Clallam county.

Upon his return to Port Angeles on May 9, 1916, Ritchie discovered, by a reference to the offer and acceptance, that he had inadvertently omitted lots 10 and 11, in block 38, from the description of the property contained in the mortgage. Before filing the same for record, in good faith and without fraudulent intent, but without the knowledge or consent of any of the parties, he added a description of the omitted lots. This was accomplished without any erasures and by type-writing the description of the added lots in the blank space remaining in the original instrument, so that the mortgage, when filed and afterward recorded, conformed in all respects to the agreement of the parties relating to the transfers of their property.

This action was instituted by the appellant for the purpose of annulling the mortgage and removing the cloud thereof from the lands of the plaintiff. The respondents answered, denying any knowledge of the alleged alteration, and praying affirmative relief reforming the mortgage to show the intention of the parties. After a trial upon the merits, the court made findings in favor of the respondents denying the plaintiff the relief sought, and adjudging that the mortgage be reformed to include within the mortgaged property the two lots which had been omitted therefrom and thereafter inserted by Wm. B. Ritchie. From the decree based on the findings, the plaintiff appeals. From a careful reading of the entire record, including an examination of the original instrument, it clearly appears that the findings of the trial court are supported by a preponderance of the evidence and that its decision was correct.

If it be assumed that Ritchie, by virtue of the delivery of the mortgage to him by Edwards, thereby became the agent of the appellant and was clothed with authority to make the

alteration by inserting the description of the omitted lots, the subsequent delivery of the altered instrument to the respondents would unquestionably foreclose appellant against claiming that the mortgage was void. Under such circumstances, the act of Ritchie was the act of appellant, and upon elementary principles of agency, would be binding on her.

If, on the other hand, it be assumed that the delivery of the mortgage to Ritchie with instructions to lodge it for record before delivery to the respondents created merely a special agency for that purpose and did not impliedly authorize him to make the alteration—which we consider to be the law— then the insertion of the omitted description by Ritchie, which was clearly without the authorization, knowledge or consent of the respondents, was merely the act of a stranger to the transaction which did not affect the validity of the instrument nor destroy the right of the respondents to have the mortgage reformed so as to express the true agreement of the parties.

The ancient rule that any material alteration of a written instrument, even though made by a stranger thereto, avoids such instrument has long since been abandoned; the overwhelming weight of modern authority being to the effect that a change, though material, when made by a stranger, does not avoid the instrument or affect the rights of the parties. Indeed, such change is not regarded as an alteration. In legal contemplation, an alteration of a written instrument consists in the erasure, interlineation, addition or substitution of material matter affecting the identity of such instrument or the rights or obligations of the parties arising therefrom, made by a party thereto, or one entitled thereunder, or one in privity with such person, without the consent of the other party, and after the instrument has been fully executed. Any change made by a stranger to the instrument, without the connivance or consent of the parties, is, strictly speaking, a spoliation. 2 Corpus Juris, pp. 1172-

1231; 2 Am. & Eng. Ency. Law (2d ed.), p. 184; 1 Green-leaf, Evidence, §§ 565, 566; *Bigelow v. Stilphen*, 35 Vt. 521; *United States v. Spalding*, Fed. Cas. No. 16,365; *Ames v. Brown*, 22 Minn. 257; *Union Nat. Bank v. Roberts*, 45 Wis. 373; *Boyd v. McConnell*, 10 Humph. (Tenn.) 68; *Nichols v. Johnson*, 10 Conn. 192; *Robertson v. Hay*, 91 Pa. St. 242; *Lee v. Alexander*, 9 B. Mon. (Ky.) 25; *Bridges v. Winters*, 42 Miss. 135, 97 Am. Dec. 443; *Cochran v. Nebeker*, 48 Ind. 459; *Rees v. Overbaugh*, 6 Cow. (N. Y.) 746; *Chessman v. Whittemore*, 23 Pick. (Mass.) 231; *Jackson v. Malin*, 15 Johns (N. Y.) 293; *Fullerton v. Sturges*, 4 Ohio St. 529; *Hunt v. Gray*, 35 N. J. L. 227, 10 Am. Rep. 232; *Forbes v. Taylor*, 139 Ala. 286, 35 South. 855; *Andrews v. Calloway*, 50 Ark. 358, 7 S. W. 449; *Walsh v. Hunt*, 120 Cal. 46, 52 Pac. 115, 39 L. R. A. 697; *Orlando v. Gooding*, 34 Fla. 244, 15 South. 770; *Fry v. Jenkins*, 173 Ill. App. 486. This doc-trine is approved in this jurisdiction in *Murray v. Peterson*, 6 Wash. 418, 33 Pac. 969, wherein Judge Dunbar, speaking for the court, said:

"Nor do we understand that the rule is contended for by the appellants that a material alteration made in a written instrument, whether by a party or a stranger, avoids the in-strument. At all events the whole trend of modern authority is opposed to this rule, for while there is no doubt that a willful and material alteration of a written instrument made by one of the parties to it, and without the authority of the other party, defeats any rights he would otherwise have un-der it, the rule that an alteration, although material, cannot invalidate a written instrument when made by a stranger to the contract is just as thoroughly established. . . . And this, in our opinion, is a just rule, for while it is true that a party who has the custody of a written instrument should be held to a reasonably strict care of it, and care should be taken to prevent him from declaring on an altered instru-ment, and then simply curing it if the fraud be discovered, yet more abuses, in our judgment, would occur if, by the spoliation of an instrument by a stranger, the party entitled to it should thereby be deprived of his relief."

The reason for the rule is nowhere better stated than in *Bigelow v. Stilphen, supra:*

"Clearly, it is not just that a man should be deprived of an honest debt, or have the evidence of it destroyed for all beneficial purposes, in consequence of the misconduct of a stranger, to whose act he did not assent, and of which he had no knowledge. It is not the fact, that an instrument is altered, that makes it void; if it was, an alteration by accident or mistake, would have that effect. It is the intent, that gives the act its character and avoids the instrument, and it is difficult to understand why a man who has done no wrong, nor consented that any should be done, should be punished to the extent of the amount of his demand by having his claim cancelled by operation of law, solely because another has been guilty of an act for which he ought to be punished. Public policy does not require any such rule. Declaring the instrument void in case of alteration, has no tendency to deter a stranger from making such alteration. Punishment inflicted upon the innocent, has no terror for the guilty, and if such a rule was established, it would by no means follow that when an alteration was made by a stranger, it would be made for the benefit of the holder. The sole object in making the alteration might be to render the instrument void. It might be from motives of friendship to the maker, or enmity to the holder, or from selfishness on the part of the stranger, he expecting thereby to add to the security, or increase the probability of collecting a debt of his own against the maker. These considerations are quite as likely to lead to an alteration, as a desire to benefit the holder, and the probabilities of success are much greater."

It is equally well settled that, in the application of this rule, an agent of one of the parties, when acting beyond the scope of his authority, express or implied, in making the change, is regarded as a stranger to the transaction. 2 Corpus Juris, p. 1236; *Bigelow v. Stilphen, Ames v. Brown, Walsh v. Hunt, Robertson v. Hay, Forbes v. Taylor,* and *Hunt v. Gray, supra; Aetna Nat. Bank v. Winchester,* 43 Conn. 391; *Gleason v. Hamilton,* 138 N. Y. 353, 34 N. E. 283, 21 L. R. A. 210; *Deering Harvester Co. v. White,* 110 Tenn.

132, 72 S. W. 962; *White Sewing Mach. Co. v. Dakin*, 86 Mich. 581, 49 N. W. 583, 13 L. R. A. 313; *Lanum v. Patterson*, 143 Ill. App. 244; *Miller v. Stark*, 148 Pa. St. 164, 23 Atl. 1058; *Woodworth v. Bank of America*, 16 Johns. 391, 10 Am. Dec. 239, 267, note.

It has been held in many jurisdictions that where a written instrument, through mutual mistake, fails to express the true agreement of the parties, an alteration by one of them, made in good faith for the purpose of causing the writing to evidence the contract as actually made and entered into, will not affect the validity of the instrument nor preclude the party making the change from enforcing the document as altered. However, it is not necessary to go to that extent in deciding this case; we merely call attention to the doctrine for the purpose of showing the trend of thought upon the question. Here the facts show the change was made by a stranger to the instrument, and we prefer to rest our decision upon the rule heretofore announced in that respect which meets with the universal approval of modern authority.

The trial court's conclusion denying the plaintiff the relief sought was, therefore, correct; so, also, was its decision that the mortgage should be reformed by adding thereto the description of lots 10 and 11, in block 38, to make the mortgage read and be in all respects as the same is now recorded in the office of the county auditor. This relief was sought affirmatively in the answer by a pleading in the nature of a cross-complaint, the material allegations of which were denied by the reply. The decision in that respect is supported by a vast preponderance of the evidence. The written offer of the appellant, when seasonably accepted by respondents, constituted a valid and enforcible contract for the exchange of the properties in accordance with its terms, one of which was that the mortgaged premises should include the property conveyed by the respondents to the appellant. In preparing the instruments essential to a completion of the transaction as agreed upon, a portion of the property conveyed was un-

intentionally omitted from the mortgage given to secure the balance of the purchase price. The evidence is clear that the parties intended the mortgage should contain the omitted description. Under such circumstances, it was quite proper to reform the instrument, at the request of the injured party, to have it express the previous agreement and manifest intention of the parties.

It is next urged that the court excluded evidence offered by the plaintiff to show that no such antecedent agreement as claimed by defendants, was ever made, and that it refused to allow the plaintiff the privilege of rebutting the evidence of defendants in support of their plea for affirmative relief. An examination of the record convinces us that there is no merit in either of these contentions.

The judgment is affirmed.

ELLIS, C. J., MOUNT, MAIN, PARKER, MORRIS, CHADWICK, and HOLCOMB, JJ., concur.