[No. 7549.]

DIVIDE CANAL & RESERVOIR CO. v. TENNEY.

1. CONTRACTS—*Ratification*—The alteration of a contract previously put in writing may be ratified, either by express words or by implication from facts which exclude any other conclusion. By a contract between plaintiff and the Divide Ditch Company, predecessor of defendant, as originally framed, plaintiff conveyed to said company "all rights * * * secured by the appropriation of water from Columbine creek," and said company agreed "to measure the water which may be secured * * * by the Columbine ditch," and pay plaintiff annually, at a certain rate, for one-third of said water, in excess of what, under another provision, it might deliver to him; but the president of the corporation, having before that obtained from plaintiff a conveyance of all his interest in the Columbine ditch, and the appropriation of water thereby made, before delivery of the contract, struck out all words relating to the Columbine ditch and the appropriation thereby, and in a letter transmitting the contract so amended, to plaintiff, expressly called attention to this erasure, declaring that this was never in the agreement. Plaintiff made no objection to this erasure until nearly four years later. Meantime the Divide company and its successors, had, at large expense, completed the Columbine ditch, plaintiff being at the time aware of the work so carried on. *Held*. that by his acquiescence plaintiff had ratified the erasure. (19)

2. ——*Construed*—By an agreement between plaintiff and the Divide company, predecessor of the defendant, plaintiff assigned to that company "all rights * * * secured by the appropriation of water by said company from Sand creek and Dead Man's creek," and the company agreed to measure the water secured by the Divide ditch, and pay plaintiff, annually, at a certain rate, for a certain part of these waters. *Held*,

that plaintiff was not entitled to an allowance for any share of any water except the appropriations which he transferred. (20)

3. PLEADINGS—*Contracts Set Out in Haec Verba*—Action upón a contract. The answer denied the contract and set out *in haec verba* what it alleged was in fact the agreement. *Held*, that defendant was entitled to show that the contract set up in the answer was in truth, that upon which the minds of the parties met; the fact that the contract as pleaded by defendant was identical with that alleged by plaintiff, save as to a certain erasure made before delivery, did not require any different or more particular method of averment than that adopted by the answer. (21)

*Appeal from Larimer District Court.*—HON. HARRY P. GAMBLE, Judge.

Mr. JAMES W. M'CREERY and Mr. DONALD C. M'CREERY, for appellant.

Messrs. LEE & AYLESWORTH, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellee, as plaintiff, brought suit against appellant, as defendant. His complaint included several causes of action. There was judgment for plaintiff and defendant appeals.

The first cause of action was to quiet plaintiff's title to an interest which he claimed in water delivered by means of the Columbine ditch, and was based on a contract between plaintiff and the Divide Ditch Company, dated November 21st, 1901, wherein it was recited that the ditch company, in consideration of certain acts therein specified to be performed by plaintiff, agreed to deliver him, free of all expense, water sufficient for the irrigation of lands particularly described. The contract further recited that the company agreed to measure the water which might be secured by the Divide and Columbine ditches and determine what was the full one-third of such water and pay plaintiff annually on the 1st day

of November of each year $6.00 per million cubic feet
for all of the one-third of the water delivered by these
ditches in excess of the amount furnished for the irriga-
tion of plaintiff's land. The contract also recited that
plaintiff, in consideration of the covenants on the part of
the defendant:

"By these presents does sell, convey and assign unto
the said Divide Ditch Company the entire undivided one-
third interest in and to all of the rights, privileges and
franchises pertaining to and secured by the appropria-
tions of water by said company from those streams
known as Sand creek and Deadman creek in said Lari-
mer county (and also all of the rights, privileges and
franchises pertaining to and secured by the appropria-
tion of water from the Columbine creek in said Larimer
county)."

This contract is somewhat inartificial and ambiguous
but it appears therefrom, and from the testimony, that
plaintiff was the owner of an interest in the property
conveyed, and that the consideration for such convey-
ance was the covenant on the part of the Divide Ditch
Company to deliver him one-third of the water annually
derived from the appropriations mentioned in the con-
tract, for the irrigation of his land therein described, and
in case he did not use or require all of this volume he was
to receive $6.00 per million cubic feet for the difference
between the amount he used to irrigate his land, and the
full one-third of the water obtained and diverted each
year from these sources. About February 15th, 1904,
the Divide Ditch Company transferred the rights ac-
quired under the contract to the defendant company. The
defendant denied the contract as pleaded, which was set
out, *haec verba,* in the complaint, and set up as the con-
tract between the parties an agreement which contains
no reference to the Columbine ditch. It appears from
the testimony that the contract set out by the plaintiff
was taken by the late Governor Eaton, then the president
of the Divide Ditch Company. November 4th, 1902, plain-
tiff wrote a letter to Eaton, in which he stated:

"I am compelled to again ask you for the contract relative to the Sand Creek ditch."

A few days later Eaton replied:

"Inclosed please find contract as requested. I went to the County Clerk's records this morning and failed to find the recorded contract. Then I came up here and found the contract that I had and in that contract the Columbine was included and I have taken the liberty to scratch it out as that was never in our agreement."

The erasures made covered that portion of the contract as above quoted enclosed in parenthesis and also all reference to the Columbine ditch in other parts of the instrument. January 11th, 1907, plaintiff recorded the contract sent by Eaton with the erasures as made by him and also the letter written by Eaton. The only difference between the contracts pleaded by the respective parties is that in the one relied upon by plaintiff it is pleaded as though no erasures had been made while on the part of the defendant it was claimed that the contract between them was the one in which the erasures were made. The question thus presented is, which was the true contract between the parties, that is, whether the contract as changed by the erasures is the one by which the plaintiff is bound, or whether the defendant is bound by the contract as originally drafted. This becomes important, for the reason that plaintiff, under the contract as originally drafted was entitled to one-third of all the water carried annually by the divide ditch, from the appropriations he conveyed, including the volume diverted through the Columbine ditch, from its appropriations, when, under the contract after the erasures were made all consideration of that ditch and its appropriations would be excluded. Whether then plaintiff was or was not entitled to one-third of the water diverted by the Columbine ditch depends upon whether he is bound by the contract after it was changed by the erasures made by Eaton. This must be determined from the facts and the principles of law applicable thereto.

Plaintiff and one Wilson commenced the construc-

tion of a ditch, the purpose of which was to divert water from the creeks named in the contract into the Cache La Poudre river. Before this work was completed Wilson conveyed a part of his interest in the system to the Divide Ditch Company and the remainder to plaintiff. Later plaintiff entered into the contract set out in his complaint. As above stated, all reference to the Columbine ditch and its appropriations were thereafter stricken from this contract by Eaton. It does not appear that plaintiff, when he received the contract from Eaton, in which all reference to the Columbine ditch and its appropriations were erased, objected to the erasures, although his attention was directly called to them by the letter accompanying it; the reason for the erasure being, as stated in the letter, that the Columbine ditch "was never in our agreement." The Divide Ditch Company commenced to construct the ditch intended to utilize the purchase from Wilson and plaintiff, but it was not entirely completed until after February, 1904, at which date it was conveyed to the defendant company and thereafter fully completed by the latter. It appears that plaintiff was aware of the work being carried on by defendant and its predecessor and that the first objection he made to the erasures was in November 1906, when a statement showing the amount of water run in the ditch, which did not mention the Columbine, was handed to him. It also appears that on May 1st 1902, by quit-claim deed recorded five days later, he conveyed to Eaton, as recited therein:

"The right of way for that certain ditch known as the Columbine ditch, located in section twenty-six in Tp 10 N R 75 West with all rights to the appropriation of water and any and all interests therein."

This is the same property which he claimed was included in the contract as originally drafted. By mesne conveyances the rights thus acquired by Eaton became vested in the defendant.

A material alteration in a written instrument may be ratified after it has been executed and delivered, and if so ratified will bind the parties; 7 Am. & Eng. Encyc.

of Law 144. Ratification may be express or it may arise
by implication. If it is to be implied, facts must be estab-
lished from which it necessarily results; *Idem*. Plaintiff
did not expressly assent to the change in the contract and
the question therefore is, did he impliedly do so? He
knew of the change but did not object. He knew that
after the change work was being prosecuted on the ditch
system by his vendee, and its successor, the defendant.
He remained silent for about four years and then, when
a statement was rendered showing the volume of water
he was entitled to receive royalty upon, which excluded
the Columbine ditch, objected for the first time by claim-
ing that he should be paid for water diverted by the
Columbine ditch.

Prior to the change he had parted with his interest in
the Columbine ditch by conveyance to Eaton. This situ-
ation explains his silence and clearly manifested an in-
tention on his part to ratify the contract as changed, for
the very obvious reason that the facts as they existed at
the time of the change required that the Columbine ditch
should be excluded from the contract. Without any ob-
jection from plaintiff relative to the change, the ditch
system was completed by the defendant and its predeces-
sor. The silence of the plaintiff in these circumstances
would naturally cause the Divide company as well as the
defendant to conclude that the work of completing the
system was being prosecuted with the understanding on
their part and the part of the plaintiff that the contract
as modified by the erasures evidenced the agreement be-
tween them and calls for the application of the legal
maxim that, ''He who is silent appears to consent.''

It is settled law that if a party by conduct has in-
timated that he consents to an act which has been done,
or will offer no opposition to it, although it could not
have been lawfully done without his consent, and he
thereby induces others to do that from which they other-
wise might have abstained, he can not question the le-
gality of the act he has so sanctioned to the prejudice
of those who have acted on the fair inference to be drawn

from his conduct. *Truesdail v. Ward,* 24 Mich. 117. We must therefore hold from the undisputed facts that plaintiff assented to the change in the contract made by the erasures and is bound thereby as it read after this change was made.

The trial court, however, held by the judgment rendered that the contract without the erasures was the agreement between the parties, and decreed that plaintiff's right to water diverted by the Columbine ditch be quieted, and assessed damages for the failure of defendant to account to and pay him for his share of the water carried in this ditch. This we think was error for the reasons above stated.

Plaintiff also claimed and was awarded damages upon the ground that for the years 1906 and 1907 the defendant, without authority, had deducted from the volume carried by the Divide ditch 48 cubic feet per second of time, and for the year 1908, 21 cubic feet, thus reducing the volume to which the plaintiff claimed he was entitled to be paid for under his contract with the company. The testimony discloses that this water did not belong to the company, nor was it diverted for its use but that it represented water from appropriations made in Wyoming, which one Bruce G. Eaton claimed to have purchased, and that it was carried through the ditch system of defendant for his use and benefit. It may be that Eaton was without right to this water and could not lawfully divert it, but this is immaterial. Plaintiff certainly was not entitled to any portion of it except he established that it belonged to the company. This he failed to do. Independent of this, plaintiff is precluded from asserting any claim to this water, for the reason that the contract does not contemplate that he was to share in water except from the appropriations which he transferred.

The remaining question relates to the judgment awarding damages on the third cause of action. The averments of the complaint with respect to this cause are to the effect that for the year 1905 the defendant requested the plaintiff to rent a sufficient number of shares

of the North Poudre Irrigation Company stock for the proper irrigation of his land, described in the contract between himself and the Divide company; that, acting on this request, he rented such stock at an expense of $350.00, which defendant has refused to pay. The court found in favor of plaintiff on this cause of action. Without going into details we think the testimony sustains the agreement pleaded and that the judgment of the court, awarding the plaintiff the amount of the obligation he incurred in renting the stock, is supported by the evidence. The judgment of the district court on this cause of action is affirmed.

Except as to this cause of action the judgment of the district court is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

Two-thirds of the costs in this court will be taxed to appellee and one-third to appellant.

*Judgment affirmed in part and reversed in part, and the cause remanded.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.

*On Petition for Rehearing.*

Mr. JUSTICE GABBERT delivered the opinion of the court:

In their brief for rehearing counsel for plaintiff contend, that under the pleadings the question of his consent to the changes in the contract was not presented because defendant did not plead a substitute agreement or the assent of plaintiff to the erasures. By answer, the defendant denied the contract set out in the complaint, and pleaded *haec verba,* the contract upon which it relied. Evidence to establish a contract need not be pleaded. Defendant having specifically set up the contract upon which it relied, could show that this instrument was the

one between the parties by assent to changes in the contract relied upon by plaintiff after it was executed, for the reason that this was merely testimony to establish the contract pleaded by defendant.

From the testimony the Wyoming water is in no sense involved. Plaintiff's rights are confined to the appropriations he transferred and as defined in his contract. His contract does not purport to give him any other interest. It is therefore wholly immaterial from what source or by what means additional water is secured by defendant or carried through its ditch, so long as by so doing plaintiff's rights under his contract are not infringed, or defendant does not refuse to comply with the terms and conditions of that contract to his damage.

We have determined the case on the record before us, but this does not preclude either party on retrial, from introducing competent testimony which might establish facts different from those now presented.

The petition for rehearing is denied.

*Rehearing denied.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.