MAGGIE STRONG *vs.* BOSTON MUTUAL LIFE INSURANCE
COMPANY.

Suffolk.    May 8, 9, 1933. — May 23, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Release. Evidence,* Of fraud. *Fraud. Insurance,* Life.

At the trial of an action upon a policy of life insurance, it appeared that
the defendant had refused to pay the amount of the policy because
of a discrepancy between a statement in the insured's application for
the policy and a statement in the proof of loss made by the plaintiff,
a woman, after the death of the insured; and, in answer to special
questions submitted to them, the jury found that the plaintiff exe-
cuted a general release, not shown to have been under seal, in con-
sideration of the payment to her by the defendant of the amount of
the premiums paid on the policy. The release was admitted in evidence
and a verdict was ordered for the defendant. *Held,* that

(1) Testimony by the plaintiff, merely to the effect that she was
unable to read and write anything beyond her signature, that the
instrument which she signed was not read to her and that she did not
know what that instrument was, there being no evidence that she
asked to have the instrument read to her or that its contents were
misdescribed to her, would not warrant a finding that the release was
obtained from her by fraud, even disregarding testimony, by an agent
of the defendant who obtained the release, showing that there had
been no fraud upon the plaintiff;

(2) Sufficient consideration for the release appeared;

(3) There was no error in the admission of the release in evidence
or in the ordering of a verdict for the defendant.

CONTRACT. Writ dated December 4, 1930.

The action was tried in the Superior Court before
*Collins,* J. Material evidence is stated in the opinion.
It did not appear that the release therein mentioned was
under seal. The judge ordered a verdict for the defendant.
The plaintiff alleged exceptions.

*J. J. Butler,* for the plaintiff.

*E. H. Lane,* (*P. J. Lane* with him,) for the defendant.

RUGG, C.J.    This is an action upon a policy of insurance
upon the life of her son payable to the plaintiff. The plain-
tiff's evidence tended to show that she had complied with

all the terms of the policy, that she had submitted satisfactory proof of loss, that the insured was in sound health when the policy was issued, and that the sum of $52.20 had been paid on account of the policy up to the date of the death of the insured.

The application for the policy signed by the insured but not made a part of the policy provided: "I declare that the answers to the above questions are true and complete, and are made by me to induce the Boston Mutual Life Insurance Company to enter into a contract of insurance, and that the policy which may be granted by the Company in pursuance of this application, shall be accepted subject to the conditions and agreements contained in the policy." There was evidence tending to show that shortly after the death of the insured there were presented to the defendant proofs of loss which contained one statement, differing from statements in the application, to the effect that, at some time previous to the issuance of the policy, the insured had been in a hospital whereas the application contained ·the statement that the insured had never been in a hospital. Because of this discrepancy the plaintiff was informed by agents of the defendant that it was unwilling to pay her the amount of the policy; "after some conferences with the officers of the company and its superintendent, the plaintiff signed a release and indorsed a check in the sum of $52.20, the amount of the premiums paid by the plaintiff to the defendant, and said check was delivered to the undertaker of the insured. These signatures were made under the circumstances testified to by the plaintiff and the superintendent of the defendant company as follows: The plaintiff testified that she was unable to read; that the extent of her ability to read and write was the writing of her name, and that the instrument was not read to her by any one, and that after signing some paper she did not know what it was; that the superintendent of the company asked her to acknowledge the instrument and say that she was satisfied. The plaintiff testified that she said she was not satisfied and never would be until she received her money under the policy." The superin-

tendent of the defendant testified to an interview with the plaintiff to the effect that he explained to her that the reason why the defendant was not willing to pay the amount of the policy was because the insured was sick and his health imperilled for a length of time before the policy was issued and that the company would not return the premiums actually paid on the policy without a release discharging it from any action on the claim, and that he said to her that he would not sign it if he were in her place, and that if she did not want to sign it it was within her rights to bring an action on the policy, but that if she did not sign the release and accept the check the only thing for him to do was to return them to the home office of the company. The defendant offered in evidence a release of all demands which was signed by the plaintiff, and also a check for $52.20 payable to the plaintiff and bearing her indorsement.

Two questions were submitted to the jury: "1. Did the plaintiff receive the sum of $52.20 in consideration of the signing of that paper? 2. Did the plaintiff sign the instrument?" The jury answered both questions in the affirmative. Thereupon a verdict was directed for the defendant. The plaintiff excepted to the admission of the release in evidence, to the refusal by the trial judge to rule that there was no consideration for the alleged release, and to the direction of the verdict for the defendant. The argument of the plaintiff is that the judge should have submitted the case to the jury "on the question of fraud, concealment and lack of consideration in obtaining the release."

If the testimony of the superintendent of the company relative to the signing of the release was believed to be true, manifestly there was no ground for any belief that there was fraud, concealment or lack of consideration in the execution of the release. If this testimony of the defendant was disbelieved, then there remains only the testimony of the plaintiff. The circumstance that she was unable to read or to write anything beyond her signature is immaterial and does not constitute of itself evidence of fraud.

*McNamara* v. *Boston Elevated Railway,* 197 Mass. 383. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465. *Gold* v. *Boston Elevated Railway,* 244 Mass. 144. *Costello* v. *Hayes,* 249 Mass. 349. Her testimony utterly fails to show that any misrepresentation was made to her. She did not ask to have the release read to her. There is nothing to indicate that its contents were stated to her incorrectly; there is no ground for inferring that any fraud was practised on her. There was ample evidence of consideration for the execution of the release.

*Exceptions overruled.*