ALFONSO BARLETTA, administrator, *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk. January 7, 1937. — May 24, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Release. Evidence,* Presumptions and burden of proof, Of fraud. *Contract,* Validity, Rescission. *Fraud.*

The signature to a release showing on its face no marks of alteration was *prima facie* evidence that the entire document was the signer's act.

The validity of an admittedly executed release was not impaired by evidence that words had been added above the signature unless it was also proved that they were added without the consent of the signer.

An administrator seeking to rescind a release admittedly executed by his intestate had the burden of proving the existence of facts showing a right to rescind.

Fraud in obtaining a release of a claim for personal injuries could not be found on certain evidence which was insufficient to support a contention that the releasor was led to sign it by physicians' opinions given in bad faith; evidence of a statement made to the releasor which was at most a promise of consideration in addition to that set out in the release, and which did not deceive him as to the effect of his signing; and evidence that the body of the release, when signed, was covered by other papers clipped to it.

TORT. Writ in the Superior Court dated February 9, 1932.

The action was tried before *Beaudreau*, J., who, after the recording with leave reserved of a verdict for the plaintiff in the sum of $3,000, ordered entered a verdict for the defendant. The plaintiff alleged exceptions.

*W. P. Murray, M. Colten & G. V. Slade*, for the plaintiff, submitted a brief.

*J. Wentworth*, (*J. M. Hall* with him,) for the defendant.

LUMMUS, J. This action for personal injuries was begun on February 9, 1932, by John Belmonte, and after his death on January 14, 1935, was prosecuted by the administrator of his estate. Belmonte was a servant of the defendant, which was not insured under the workmen's compensation act. The jury returned a verdict for the plaintiff. Under leave reserved (G. L. [Ter. Ed.] c. 231, § 120), the judge entered a verdict for the defendant. Exceptions of the plaintiff bring the case here.

Belmonte could speak both Italian and English, but could not read. He was injured on June 16, 1926. On July 16, 1926, he dictated to his niece a letter in English, asking for a settlement. She wrote it out and sent it to the claim department of the defendant. A claim agent, named Thomas F. Dolan, visited him, and in consequence Belmonte signed the following document: "Advance Payment. East Boston, Mass., August 17, 1926. Received of the New York, New Haven and Hartford Railroad Company, through G. S. Hamlin, Claim Agent, the sum of $141.36 as an advance payment in connection with the settlement of my claim for personal injuries sustained at Fall River June 16-1926  It is fully understood and agreed that the railroad company makes this advance payment to relieve my immediate needs and that when I settle my claim later on the amount now received by me will be deducted from the total payment due me which will be based upon full time and reasonable medical expenses." This was witnessed by Dolan; by Dr. Joseph St. Angelo, the attending physician employed by Belmonte; and by Lucy Cristallo, a niece of Belmonte.

On September 9, 1926, Belmonte was examined by the late Dr. Francis D. Donoghue, who was apparently employed by the defendant, although Belmonte also expressed confidence in him. Dr. Donoghue reported that Belmonte, who was about forty-three years old, was "suffering from some deficiency of the glandular systems which makes him of the obese type," that he "has gone soft from loafing and has now reached the stage that he ought to be encouraged to work," and that "it may be fair to call him totally disabled to [for?] the present and allow him four to six weeks more to work in on the job." A claim agent named Frank D. Giacomo, after some preliminary discussion with Belmonte, made an appointment through Dr. St. Angelo to see Belmonte on September 15, 1926. On that day Giacomo read to Belmonte the report made by Dr. Donoghue. The amount of the proposed settlement was discussed. Giacomo then made out a release in full of all demands, stating the consideration as $666.36, and read the release to Belmonte in English. Belmonte, being asked, said that he could not read. Giacomo handed the release to Dr. St. Angelo, asking him to translate it into Italian for Belmonte. The doctor complied. Then Belmonte executed the release, with his nieces Mary J. Ventre and Lucy Cristallo, Dr. St. Angelo, and Giacomo as witnesses. The consideration expressed in the release was paid.

The two nieces of Belmonte who witnessed the release testified that when they signed the paper it did not contain the words "This release was read to me and I fully understand it," appearing above the signature of Belmonte. The claim agent, Giacomo, testified that he inserted the words in question after discovering that Belmonte could not read and before Belmonte signed. The signature of Belmonte to a document showing on its face no marks of alteration was *prima facie* evidence that the entire document was his act. *Wilde* v. *Armsby*, 6 Cush. 314. *Simpson* v. *Davis*, 119 Mass. 269. *George N. Pierce Co.* v. *Casler*, 194 Mass. 423, 426, 427. We pass by the question whether the alteration charged was material. *Thorpe* v. *White*, 188 Mass. 333, 334. It did not affect the construction or

operation of the release. The decisive point is that the testimony of the nieces, if taken as true, did not show that the alteration charged was not made with the consent of Belmonte. If made with his consent, the validity of the release was not impaired. *Long* v. *Lowrey*, 243 Mass. 414, 418.

Faced with the release, which admittedly was executed by Belmonte, the plaintiff had the burden of proving the existence of facts showing his right to rescind it. *Griffin* v. *New York, New Haven & Hartford Railroad*, 279 Mass. 511, 515. *Costello* v. *Hayes*, 249 Mass. 349, 353, 355–356. *Nutt* v. *Aldrich*, 267 Mass. 193. *Strong* v. *Boston Mutual Life Ins. Co.* 283 Mass. 88. *Willett* v. *Herrick*, 258 Mass. 585, 607. *MacDonald* v. *MacDonald*, 291 Mass. 299, 302.

The plaintiff relies on the following evidence. X-ray photographs of Belmonte's body, taken in 1932, showed that the heads of both femurs had been almost absorbed. This would produce limitation of motion. The physicians who gave this testimony admitted that the condition might be congenital or the result of infection, instead of traumatic; although one of them said "that had this condition existed before the accident it would have made itself manifest." Just how, or to what extent, did not appear. Neither was it shown that the condition did not make itself manifest before the accident. Medical evidence for the defendant, based on the same photographs, was that the condition must have existed before Belmonte reached the age of eighteen years, and that the condition did "not mean that he couldn't or didn't walk." There is no evidence that either Dr. Donoghue or the attending physician had any x-ray photographs or suspected the condition that was later disclosed. From the execution of the release until a few days before he died, Belmonte neither had nor sought medical treatment. The nieces who testified that during all that period Belmonte was unable to work or even to leave the house, admitted writing at his dictation a series of letters, covering the entire year 1927, in which he told representatives of the defendant that he wished to go to work and asked for a job. The evidence narrated consti-

tutes an inadequate foundation for the superstructure of argument by which the plaintiff attacks the good faith of Dr. Donoghue and the attending physician in expressing the opinion that led to the giving of the release. *Walsh* v. *Fore River Shipbuilding Co.* 230 Mass. 89, 92.

The same two nieces of Belmonte testified that when they were about to witness his signature to the release, Dr. St. Angelo said to them in the presence of the claim agent and Belmonte, "Girls, we are giving this money to your uncle for his back wages and a few weeks in advance; then he will be all right to go to work and if he can't work we will give him $16 a week compensation." This evidence, if believed, would not deprive the executed release of its effect as a destruction of the cause of action for alleged negligence. The evidence has no tendency to show that Belmonte was deceived into thinking that he was not releasing that cause of action. The notes of an expert medical witness for the plaintiff showed that when he examined Belmonte in 1932, Belmonte told him that he had settled with the company. At most, the evidence showed a promised consideration that did not appear in the release; a consideration to which Belmonte, during the remaining eight years of his life, apparently made no claim

The same two nieces testified also that the body of the release was covered by other papers fastened to the release by a clip, at the time they signed as witnesses. Without other evidence of fraud, that has no significance. Papers are often executed in perfect good faith while fastened together in such a way that one paper has to be lifted in order to read the one beneath.

*Exceptions overruled.*