[No. 297-40880-1.    Division One—Panel 2.    October 26, 1970.]

PUGET SOUND MARINA, INC., *Respondent,* v. HANS T. JORGEN-SEN *et al., Appellants.*

*Hay, Epstein & Young* and *John L. Hay,* for appellants.

*Williams, Strong, Thomson & Cole* and *Robert C. Strong,* for respondent.

HOROWITZ, A. C. J.—Plaintiff, Puget Sound Marina, Inc., a vessel broker, was awarded judgment below for a commission on the sale of the vessel *Pagan* as authorized by a listing agreement. Defendants appeal. The four assignments of error are basically directed to the sufficiency of the evidence to support the trial court's findings and conclusions.

The defendants, the owners of the vessel *Pagan,* entered into a written brokerage agreement under date of February 26, 1966, empowering the broker to "sell . . . the boat and marine equipment described on the reverse side hereof

at the price and . . . upon such terms as the owner may hereafter approve." The listed price was $34,500 and the stated broker's commission was 10 per cent. The reverse side of the agreement contained a description of the boat and deck equipment. One item included under the heading of small boats read: "1 licensed by CG as rescue boat." This description conformed to oral negotiations preceding the agreement next referred to. After some effort and expense incurred to sell the vessel, plaintiff showed it to a Mr. Adams from Los Angeles, California, on Thursday, August 24, 1967. The vessel was examined and the equipment to be included was discussed. Mr. Jorgensen stated that everything on the vessel, with the exception of a small outboard motor, would be included. The rescue boat was prominently mounted on the ship. Later that day Mr. Adams offered to purchase the vessel for $25,000 in cash or for $29,500 on an installment basis. The latter offer was accepted and a written agreement for the sale and purchase of the vessel *Pagan* dated August 24, 1967, was signed by both defendants and Mr. Adams. The agreement provided for $2,500 deposit and an additional $6,055.50 to be paid in 10 days "after satisfactory inspection" and the balance payable over a 3-year term; that the "sale is subject to approval of credit of buyer"; and that the brokerage fee would be paid by the owners "should this offer be completed as above outlined." Mr. Adams paid the $2,500 deposit called for in the agreement. Plaintiff then obtained an application for credit from Mr. Adams which provided financial data concerning his assets and liabilities. The plaintiff commenced a credit check on Mr. Adams. This, as well as other evidence in the record, showed that Mr. Adams had an ample net worth to pay for the vessel.

The vessel while still in the water was surveyed on Friday, August 25, 1967 by Herbert Johnson of Marine Surveyors, Inc., pursuant to earlier arrangements. He made notes of what he found and made chalk marks on the vessel to designate the questionable spots; and, on that day, pointed out certain defects to Mr. Adams and the defend-

ants. The defendant husband agreed to repair the items. Arrangements were then made by the defendant and Mr. Adams for an on-dock inspection of the vessel by Captain Johnson on August 26, 1967. Mr. Adams arrived on that day and found a Mr. Biles, another prospective buyer, present. Mr. Adams was informed of additional but insignificant items and made no further complaint. He then tried to talk to the defendant about when, after the repairs were completed, he could come back to Seattle to take possession of the boat. By this time the defendant's attitude had changed and he would not discuss the details of the sale, including the agreement on the repairs. It appeared to Mr. Adams from defendant Jorgensen's demeanor that Mr. Biles' appearance in the picture had resulted in the sale falling through. Mr. Adams left, returning to Los Angeles. On August 28 or August 29, 1967, Mrs. Jorgensen telephoned Mr. Chambers, the plaintiff's representative, claiming that the rescue boat should not have been included in the price of the vessel *Pagan* and that unless she received $550 more, she was going to sell the vessel to Mr. Biles. Mrs. Jorgensen also suggested that the plaintiff reduce its commission in that amount. Plaintiff denied that the rescue boat should have been excluded and refused to reduce the commission. On August 28, 1967, defendants' attorney wrote to Mr. Adams stating that the vessel had been sold "as is", inquiring as to whether the purchaser was willing to accept the vessel without repairs and requesting purchaser to forward a financial statement. That same day, defendants' attorney dispatched a second letter to Mr. Adams indicating that the first letter was mistaken; that the defendants had agreed to make certain repairs and inquiring as to whether the rescue boat was to be part of the deal. Copies of both letters were sent to the plaintiff. On the copy of the second letter enclosed to the plaintiff there was a postscript suggesting that Mr. Adams "was probably entitled to claim this rescue boat" and further suggesting plaintiff should have pointed out to Mr. Adams, pursuant to claimed instructions from the defendants, that the rescue boat was extra and that an

adjustment be made in plaintiff's commission in the sum of $555 because of plaintiff's failure so to do. Plaintiff denied the existence of any such instructions with respect to Mr. Adams' transaction. Mr. Adams made no response to either letter he had received and did not furnish the financial statement requested.

The evidence showed the rescue boat had not become a point of controversy until after the written agreement, as orally modified by the agreement to make repairs, was entered into. Although information set forth on Mr. Adams' credit application indicated ample financial responsibility, the trial court held that the financial responsibility requirement was waived because the true reason for the dispute was defendants' claim for an additional sum for the rescue boat asserted after the final agreement for the sale of the vessel had been entered into. Actions which reasonably indicate a rejection of the contractual obligation constitute repudiation (RCW 62A.2-610, Uniform Commercial Code § 2-610, Comment 2); and the defendants' claim for an additional sum was such a rejection. There is no evidence that the seller's repudiation was ever retracted or that such retraction was ever clearly indicated to Mr. Adams (RCW 62A.2-611). Mr. Adams was, therefore, entitled to the remedy of rescission (RCW 62A.2-610(b); RCW 62A.2-711).

In our opinion, substantial evidence supports the findings of the court that the sales agreement was partly in writing and partly verbal (with reference to the repairs); that on August 26, 1967, after the oral repair agreement, Mr. Adams was ready, willing and able to purchase the vessel under the terms of the agreement reached; that subsequent to the agreement, defendants failed and refused to carry out its terms; and that the plaintiff had performed its services as broker and was entitled to its commission with interest.

Defendants contend that plaintiff broker cannot recover the commissions claimed because of a breach of his fiduciary obligations to the defendants. Plaintiff contends that this defense was not presented to the trial court and that it

cannot be raised for the first time on appeal *Gooldy v. Golden Grain Trucking Co.,* 69 Wn.2d 610, 419 P.2d 582 (1966); *Farrell v. Score,* 67 Wn.2d 957, 411 P.2d 146 (1966); *State v. Van Auken,* 77 W.D.2d 132, 460 P.2d 277 (1969). Defendants' answer pleaded as an affirmative defense the claimed breach of fiduciary duty. With respect thereto, the defendants had the burden of proof. However, the court made no findings of fact on this affirmative defense although the court did find in finding 7 that on or about August 31, 1967, the plaintiff requested and received from the defendants a release of Mr. Adams from the sales agreement. This is not a finding of fact sufficient to show violation of the fiduciary duty claimed. No error is assigned to any failure of the court to make findings, nor can we find in the record below transmitted here any discussion of the claimed affirmative defense.

We are faced with the rule (1) that the failure of a trial court to make a finding upon the issue, the burden of proving which is upon a party, is in effect, a negative factual finding on that issue (*McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970)); (2) that error to be reviewable must be assigned (ROA I-43); and (3) the well settled rule sought to be applied by the plaintiff. The last mentioned rule is not one that exists for the convenience of appellate courts. It proceeds upon the salutary principle that it is in the public interest that the trial court be the forum both for thought and after thought to the end that litigation may be terminated as early in the litigation process as possible, thereby avoiding unnecessary appeals. The rule would seem especially applicable when the issues raised are in the nature of affirmative defenses requiring a factual hearing and findings to resolve the factual issues raised. The policy behind this rule is manifested in several other related rules. A new claim of error brought forward for the purpose of reversing a judgment is too late if made for the first time on the motion for new trial (*Sherman v. Mobbs,* 55 Wn.2d 202, 207, 347 P.2d 189 (1959)), or first raised in the reply brief rather than in the appellants' brief

where it belongs (ROA I-41; CAROA 41), or on a petition for rehearing especially when raising a factual issue. *Malo v. Anderson,* 76 Wn.2d 1, 454 P.2d 828 (1969); *Nostrand v. Little,* 58 Wn.2d 111, 361 P.2d 551 (1961). It is only in exceptional cases in aid of a policy of higher priority, such as in cases involving questions of court jurisdiction, or the sufficiency of allegations in a complaint to state a claim for relief (ROA I-43; CAROA 43) or in criminal cases involving a possible denial of a constitutional right (*e.g., State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968)); or when "obvious and manifest injustice" might otherwise result (*State v. Louie,* 68 Wn.2d 304, 413 P.2d 7 (1966)) that an appellate court will notice an error raised for the first time on appeal. None of these exceptions apply here. Furthermore, we have grave doubt as to the soundness of the claimed defense under the facts here presented. For the reasons stated, we do not further consider it.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.