[No. 3956-1. Division One. September 12, 1977.]

TERATRON GENERAL, ET AL, *Appellants,* v. INSTITUTIONAL INVESTORS TRUST, *Respondent.*

---

482

*Webster, Kroum & Bass* and *Bertil A. Granberg,* for appellants.

*Lane, Powell, Moss & Miller, Charles R. Ekberg, Michael E. Morgan, Raymond W. Haman,* and *Richard F. Allen,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

The owners of the Federal Way Shopping Center appeal from a $2,216,986 judgment against them which also decreed foreclosure of a deed of trust against the shopping center and dismissed their claim for declaratory relief.

Teratron General and Pacific Security Financial Corporation, both California corporations, and Ira Terry, a California resident, were the makers of a promissory note and grantors of a deed of trust. Prior to the commencement of this action, Pacific Security Financial Corporation and Terry sold their interests in Federal Way Limited, a California limited partnership. Although Teratron General and Federal Way Limited, the owners, are both plaintiffs in this action they, as well as the original obligors, will, for convenience, be referred to collectively as "Teratron." We will refer to the lender, Institutional Investors Trust, a Massachusetts business trust, as the "Trust."

The following facts were found by the trial court.

Teratron was interested in purchasing the Federal Way Shopping Center from the trustee in bankruptcy of Federal Way Shopping Center, Inc. Acting through a mortgage broker, Teratron obtained an interim loan commitment from the Trust.

The commitment letter provided that the loan would bear interest at the rate of 4 1/2 percent per annum over prime rate of the Chemical Bank in New York but not less than 10 3/4 percent per annum in any event. It did not specify the maximum rate of interest but did provide that

the law governing the loan transaction would be the law of the State of Massachusetts. With respect to prepayment, the commitment provided that Teratron would be permitted to repay the loan without penalty at any time after 18 months, upon 60 days' prior notice. No right to repay during the first 18 months was stated.

Teratron endorsed its acceptance of the terms of the commitment letter on the face of that letter. As it developed, the closing of the loan transaction became a matter of some urgency. This was due to the trustee in bankruptcy having exhausted his authority to grant extensions for closing.

Seattle counsel for the Trust[1] prepared the documents to carry out and implement the agreement. These included a promissory note secured by a deed of trust and an assignment of rents. An officer of Teratron picked up the loan documents, hand carried them to California for signature and then returned them personally to the Trust's Seattle counsel.

The note as prepared by Seattle counsel for the Trust differed from the commitment agreement in that it provided for a maximum interest rate of 12 percent and recited that it was executed and delivered in the state of Washington and was to be construed and enforced according to the law of this state.

After the Trust's Seattle counsel conferred by telephone with Teratron's attorney in Sacramento, Seattle counsel made the following changes in the note: The place of execution was changed from Seattle to Boston; the maximum allowable rate of interest was changed from 12 percent to "in no event more than the amount allowable under Massachusetts law . . ."; and the agreement was to be construed and enforced according to Massachusetts law. The Trust's Boston counsel thereafter made another revision in

---

[1]The Trust's Seattle loan counsel was not the same as its trial and appellate counsel.

the note, changing it to reflect that the note could not be prepaid during the first 18 months.

Thereafter the loan transaction closed. Funds were sent to Seattle for Teratron's account and placed in escrow awaiting closing of the real estate aspects of the transaction in Seattle.

The entire transaction closed and Teratron entered into possession of the shopping center and commenced operating it.

Differences thereupon arose between the parties and culminated in this litigation.

Teratron commenced this action alleging that material alterations had been made in the note by the Trust. It was Teratron's claim that the changes were not approved, accepted or ratified by it. Teratron sought a declaratory judgment declaring that the note would bear interest at the rate of 6 percent per annum and asking that the Trust be restrained from instituting foreclosure proceedings.

The Trust answered Teratron's complaint and counterclaimed seeking recovery on the note and foreclosure of the deed of trust and assignment of rents. It was the Trust's claim that Teratron had defaulted in its payments on the note and had failed to pay real property taxes as required.

Teratron replied to the Trust's counterclaim generally denying the Trust's allegations and setting up as affirmative defenses: (1) that the note was fraudulently altered and the obligation and deed of trust given to secure the obligation were therefore discharged; (2) that the amount of interest charged by the trust was usurious under Washington law; and (3) that the Trust had no capacity to sue in this state.

Following a trial to the court on these issues, the trial court entered 18 pages of detailed findings of fact and conclusions of law. The following conclusions are pertinent to the issues presented by this appeal:

2.

The revisions of the promissory note by [the Trust's Seattle counsel] were in the nature of corrections to cause

the note to express the original intent of the parties, and were not made in bad faith or with intent to defraud or deceive the Borrowers. These revisions were not material or fraudulent alterations giving rise to an avoidance of the promissory note or a discharge of the obligation owed to defendant. The revisions made by [the Trust's Seattle counsel] merely conformed the instrument to the original agreement of the parties as reflected in the commitment letter.

3.

[Teratron's counsel] had apparent authority to act on behalf of the Borrowers for the purpose of this transaction and [the Trust's Seattle counsel] was entitled to rely upon [Teratron's counsel] as the agent of the Borrowers with respect to any revision of the loan documents. Changes in the promissory note agreed to by [Teratron's counsel] thus were authorized by the Borrowers.

4.

The revision, or crossing out, of a portion of a sentence pertaining to prepayment in paragraph 4 of page 1 of the note, if it is a change, does not constitute either a material or a fraudulent alteration of a promissory note. This change conforms the promissory note to the original intent of the parties with respect to prepayment.

5.

The revisions made in the promissory note were ratified and acquiesced by the Borrowers' and plaintiffs' subsequent conduct in continuing to make payments pursuant to the terms of the promissory note after they learned of the changes in the note and even after they brought their objections to defendant's attention.

Based on the trial court's findings of fact and conclusions of law, a judgment and decree of foreclosure was entered. Teratron appeals.

Three ultimate issues are dispositive of this appeal.

## ISSUES

ISSUE ONE. Did the lender's changes in the promissory note vitiate the note or the security agreements?

ISSUE TWO. Does the borrower have valid grounds on this appeal to question the validity of the entire agreement on the basis that the statute of frauds was not complied with

and that the minds of the parties did not meet on essential terms of the agreement?

ISSUE THREE. Did the trial court err in admitting into evidence a deposition taken on written interrogatories where all of the interrogatories were not answered by the deponent?

DECISION

ISSUE ONE.

CONCLUSION. The lender was entitled to enforce the promissory note as altered, as well as the security agreements, since the lender's changes in the note were corrections and had been consented to and ratified by the borrower's agent.

It was Teratron's theory in the trial court, as it also is here, in part, that the changes made in the promissory note by the attorneys for the Trust constituted material alterations which justified the declaratory relief sought by Teratron. The trial court's findings rejected that contention on three separate bases, namely, that the changes: (1) were made to conform the note to the parties' original agreement; (2) were consented to by Teratron; and (3) were ratified by Teratron.

In its briefs filed in this court, Teratron reargues the evidence presented to the trial court.

█ Findings of fact of a trial court will be accepted as verities on appeal if there is substantial evidence to support them. *Hays Merchandise, Inc. v. Dewey,* 78 Wn.2d 343, 348, 474 P.2d 270 (1970); *Hawaiian Ins. & Guar. Co. v. Federated Am. Ins. Co.,* 13 Wn. App. 7, 11, 534 P.2d 48 (1975). We cannot substitute our findings for those of the trial court where those findings are supported by substantial evidence. This is not only a matter of judicial policy, but is also a constitutional mandate. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Charles Pankow, Inc. v. Holman Properties, Inc.,* 13 Wn. App. 537, 542, 536 P.2d 28 (1975).

We have carefully reviewed the entire record submitted. We hold here, as we did in *Kaas v. Privette,* 12 Wn. App. 142, 145, 529 P.2d 23 (1974),

The findings are supported by substantial evidence in the record and, therefore, stand as verities on appeal. The unraveling and deciphering of the evidence is a function of the trial judge, and we will not upset his interpretation of the testimony when any reasonable view substantiates his findings even though there may be other reasonable interpretations.

■ An immaterial alteration of an instrument does not affect its validity under either general contract law principles or the Uniform Commercial Code. 4 Am. Jur. 2d *Alteration of Instruments* § 4 (1962); 3A C.J.S. *Alteration of Instruments* § 23 (1973). A holder is not prohibited from enforcing an instrument as altered where it was altered to correct a mistake or to conform it to the agreement of the parties. *Hendrickson v. Lyons,* 121 Wash. 632, 638, 209 P. 1095 (1922); *Lynn Tucker Sales, Inc. v. LeBlanc,* 323 Mass. 721, 84 N.E.2d 127, 128 (1949). *See Edwards v. Thompson,* 99 Wash. 188, 194, 169 P. 327 (1917). Similarly, an alteration made with consent does not prevent the holder from enforcing the altered instrument against the consenting party. *Handsaker v. Pedersen,* 71 Wash. 218, 223, 128 P. 230 (1912); *Barletta v. New York, N.H. & H.R. Co.,* 297 Mass. 275, 8 N.E.2d 800, 801 (1937). So too, when an alteration has been ratified, the holder is also entitled to enforce the instrument as altered against the ratifying party. *Divide Canal & Reservoir Co. v. Tenney,* 57 Colo. 14, 139 P. 1110, 1112 (1914); 4 Am. Jur. 2d *Alteration of Instruments* § 65 (1962); 3A C.J.S. *Alteration of Instruments* § 81 (1973). *See Chezum v. McBride,* 21 Wash. 558, 563, 58 P. 1067 (1899).

Based on the facts found by the trial court, it did not err under either Washington or Massachusetts law when it enforced the security agreements and the promissory note as altered.

Issue Two.

Conclusion. The statute of frauds is an affirmative defense and to be raised, it must be pleaded. Further,

issues, particularly those requiring findings of fact, cannot be raised for the first time after the trial and oral decision of the trial court absent exceptional circumstances.

After the parties had presented closing arguments and rested their respective cases, the trial court rendered its oral opinion in which it held for the Trust and stated with some particularity the basis for its decision. The trial court then continued the case for the entry of written findings and for the additional limited purpose of permitting the Trust to present computations of interest and proof of reasonable attorneys' fees to which it was held entitled. No post-trial motions were filed by Teratron but at some point in time thereafter, it filed an additional brief. Then more than a month following the trial court's oral decision, at the time interest and attorneys' fees were determined and the findings of fact and conclusions of law were signed, Teratron for the first time argued that the entire loan agreement was invalid because the statute of frauds, RCW 19.36.010(1), had not been complied with and there had been no meeting of the minds between the parties.

■ A lawsuit cannot be tried on one theory and appealed on others. The issues regarding the statute of frauds and meeting of the minds were afterthoughts. following the trial court's oral decision rendered in the case on the legal theories pleaded and argued. In discussing that rule in *Puget Sound Marina, Inc. v. Jorgensen,* 3 Wn. App. 476, 480–81, 475 P.2d 919 (1970), we held that

> The last mentioned rule is not one that exists for the convenience of appellate courts. It proceeds upon the salutary principle that it is in the public interest that the trial court be the forum both for thought and after thought to the end that litigation may be terminated as early in the litigation process as possible, thereby avoiding unnecessary appeals. The rule would seem especially applicable when the issues raised are in the nature of affirmative defenses requiring a factual hearing and findings to resolve the factual issues raised. The policy behind this rule is manifested in several other related rules. A new claim of error brought forward for the purpose of reversing a judgment is too late if made for the

first time on the motion for new trial (*Sherman v. Mobbs*, 55 Wn.2d 202, 207, 347 P.2d 189 (1959)), or first raised in the reply brief rather than in the appellants' brief where it belongs (ROA I–41; CAROA 41), or on a petition for rehearing especially when raising a factual issue. *Malo v. Anderson*, 76 Wn.2d 1, 454 P.2d 828 (1969); *Nostrand v. Little*, 58 Wn.2d 111, 361 P.2d 551 (1961). It is only in exceptional cases in aid of a policy of higher priority, such as in cases involving questions of court jurisdiction, or the sufficiency of allegations in a complaint to state a claim for relief (ROA I–43; CAROA 43) or in criminal cases involving a possible denial of a constitutional right (*e.g., State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968)); or when "obvious and manifest injustice" might otherwise result (*State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966)) that an appellate court will notice an error raised for the first time on appeal. None of these exceptions apply here.

None of the exceptions to the rules discussed in *Puget Sound Marina, Inc. v. Jorgensen, supra,* are involved in the present case. No motion for a new trial or for reconsideration was filed by Teratron. CR 59(a). Even if we consider Teratron's brief as equivalent to such a motion, the statute of frauds and meeting of the minds issues cannot be raised for the first time over a month after the trial court's oral decision, at the time set for entry of findings of fact, conclusions of law and judgment. *Sherman v. Mobbs*, 55 Wn.2d 202, 207, 347 P.2d 189 (1959); *Puget Sound Marina, Inc. v. Jorgensen, supra.*

Neither was the statute of frauds ever pleaded as an affirmative defense as must be done if it is to be available as a defense. CR 8(c); *Wineberg v. Park*, 321 F.2d 214, 218 (9th Cir. 1963); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1278 (1969).

It is also to be noted that after the trial court ruled that the new issues had not been properly and timely raised by Teratron, and correctly so ruled, as we here hold, it expressed the further view that in any event the statute of frauds had not been violated and that there had been a

meeting of the minds between the parties.[2] No findings were entered on these issues for the reasons noted. Under the circumstances, none were required. *Puget Sound Marina, Inc. v. Jorgensen, supra.*

ISSUE THREE.

CONCLUSION. Error was not committed by admitting a deposition into evidence even though all of the questions were not answered, since no motion to compel answers was ever made.

Teratron contends that the trial court erred in admitting the answers to written interrogatories submitted to the Chemical Bank in New York. The parties had stipulated that written interrogatories would be submitted to the Chemical Bank, and in this fashion the Trust would be permitted to present evidence regarding the prime rate of interest charged by the bank. At the hearing wherein the court was to determine the amount of interest and attorneys' fees owing by Teratron, Teratron moved to strike all of the bank's answers. Its motion was based on the bank's failure to answer questions submitted by Teratron regarding the lowest and most favorable interest rates extended to any of the bank's borrowers. The trial court overruled Teratron's objections on the ground that the omitted answers were not relevant to the issues before the court.

██ Here the Trust had filed its written objection to such interrogatories. The trial court has a reasonable degree of discretion to determine whether or not interrogatories should be answered. *Weber v. Biddle,* 72 Wn.2d 22, 29, 431

[2] As the trial court ruled when Teratron's counsel brought these additional matters up,

"And with respect to the second point that Mr. Granberg has raised, first it was my conclusion that there was a meeting of the minds between the parties, that the documents prepared pursuant to that meeting of the mind[s] did not accurately reflect the agreement that the parties had reached. Secondly, with respect to the statute of frauds, it is a matter that has to be affirmatively pleaded under Civil Rule 8, I believe, and was not a matter of pleading here. And in addition to which I feel that the brief, the answering brief adequately answers the question with respect to the fact that there was a writing originally and that this would not be within the statute of frauds."

P.2d 705 (1967). Furthermore, if a party responds to a set of interrogatories but does not answer all of them, and if answers to all of the interrogatories are to be insisted upon, a motion to compel answers under CR 37(a) should be brought. 8 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 2173, 2286 (1970). Teratron cites no authority to support its motion to exclude all of the answers, and since the issue so raised does not appear meritorious on its face, we will not further consider it. *James S. Black & Co. v. F.W. Woolworth Co.*, 14 Wn. App. 602, 608, 544 P.2d 112 (1975).

The remaining issues raised by Teratron through its assignments of error have been answered by our decision on the issues above discussed. Teratron had a fair trial and reversible error was not committed by the trial court.

■ The promissory note provides for reasonable attorneys' fees if the note becomes in default and is placed in the hands of an attorney for collection. The Trust, as the prevailing party on this appeal, has requested reasonable attorneys' fees on the appeal and is entitled to them. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 64, 442 P.2d 950 (1968); *Trust Fund Servs. v. Trojan Horse, Inc.*, 15 Wn. App. 140, 145, 548 P.2d 344 (1976). We, therefore, remand the cause to the trial court for the determination of reasonable attorneys' fees on appeal to be paid by Teratron General, a corporation, and Federal Way Limited, a limited partnership, to Institutional Investors Trust.

We do not reach the Trust's cross–appeal since, as stated in its brief, "if this court should affirm the judgment of the trial court, it is not necessary to reach this issue."
Affirmed.

SWANSON and CALLOW, JJ., concur.

Petition for rehearing denied October 31, 1977.