# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

BADGLEY MULLINS TURNER, PLLC,
a professional limited liability company,

        Respondent,

v.

PETRA RUSSELL, an individual, and
PATRIC RUSSELL, an individual,

        Appellant.

No. 75167-1-I

UNPUBLISHED OPINION

FILED: September 18, 2017

2017 SEP 18 AM 8: 47
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

VERELLEN, C.J. — Petra Russell entered into a contract with Badgley Mullins Turner, PLLC (BMT) for legal representation in two simultaneous cases. Russell and BMT agreed the representation would be billed on an hourly fee basis with payment due at the end of BMT's representation.

At the conclusion of the two underlying cases, Russell did not tender payment to BMT for legal services. BMT filed suit in King County Superior Court, alleging breach of contract, promissory estoppel, unjust enrichment, fraudulent transfer, and accord and satisfaction. Russell counterclaimed, alleging breach of fiduciary duty and unjust enrichment. The jury found for BMT on all of its causes of action in the amount of $234,829.46 and for Russell on her breach of fiduciary duty claim in the amount of $45,834. The court offset that amount against BMT's award.

BMT presented witness testimony and documentary evidence about Russell's knowledge of the fees she owed BMT throughout the litigation, including conversations between Russell and her BMT lead attorney about her responsibility to pay attorney fees. Because there is evidence or a reasonable inference from the evidence to justify the jury's verdict, the trial court did not abuse its discretion in denying Russell's motion for a new trial under CR 59(a)(7).

The trial court did not abuse its discretion in denying Russell's motion for a new trial under CR 59(a)(5) because the jury verdict fell within a range of proven damages, and the verdict was not so inadequate that it was a result of passion or prejudice. And since issues of witness credibility are for the trier of fact, Russell's motion for a new trial under CR 59(a)(9) fails.

We affirm.

## FACTS

On October 31, 2012, Russell entered into a contract with BMT to represent her in two simultaneous cases. Russell and BMT agreed on an hourly fee basis, and Russell paid BMT a $1,000.00 retainer. BMT and Russell agreed to defer payment of fees until the end of the case.

Russell's legal situation was complex. She was litigating two cases involving property in Seattle that she had purchased and remodeled with borrowed funds. She was facing claims in excess of $700,000. Her previous attorney had stopped working on her case because Russell failed to pay her bill.

Russell was at risk of losing her property and faced upcoming hearings on an order to show cause and a motion for appointment of custodial receiver. When BMT

first appeared in the case, the attorneys recognized it would require extensive work, there was a pending trial date, her discovery responses were overdue, and she was facing sanctions for noncompliance. BMT agreed to seek attorney fees and costs from the opposing parties, but the engagement agreement contemplated that Russell was responsible for the attorney fees and costs.

The litigation proved to be complicated and contentious. The lead attorney, Randall Johnson, testified he spent between 400 and 500 hours on the case. Another BMT attorney worked 259.1 hours on the case. Russell was aware that she entered into the agreement on an hourly basis and accepted hundreds of hours of legal services from BMT. Russell was in contact with BMT staff throughout the process and received updates and information regarding the progress of her case.

Johnson regularly communicated with Russell about all aspects of the case, including the fees and costs accrued. At various stages during the litigation, Johnson and Russell discussed her responsibility for payment of attorney fees.

The parties participated in mediation later that year where there was discussion about outstanding legal fees. Russell insisted that she was willing to go to trial even though she had limited funds and could not afford to pay her attorneys. Ultimately, Johnson negotiated a settlement vacating a $125,000.00 default judgment against Russell and reducing her debt from $580,000 to $180,000. The opposing party would not agree to pay Russell's attorney fees as part of the settlement. Russell met with BMT attorneys to discuss an invoice for fees and costs before deciding whether she still wished to proceed with the settlement agreement.

After the parties settled, Russell gave no indication that she was unwilling to pay her legal bill. At Russell's request, BMT's managing partner, Duncan Turner, worked with Russell to develop a plan to sell one of her properties and offered her $2,000 to assist with cleaning debris and trash from the property if she would agree that BMT would be paid from escrow. Russell did not follow through with the sale of the property and did not pay the balance of the fees and costs due.

BMT sued Russell, alleging breach of contract, promissory estoppel, unjust enrichment, fraudulent transfer, and accord and satisfaction. Russell counterclaimed, alleging breach of fiduciary duty and unjust enrichment. The matter went to trial in King County Superior Court. The jury found for BMT on each of its claims and awarded $234,829.46 in damages. The jury found for Russell on her breach of fiduciary duty claim and awarded her damages in the amount of $45,834. The trial court entered judgment for BMT in the amount of $197,995.46 and denied Russell's CR 59(a) motion for a new trial.

Russell appeals.

## ANALYSIS

Russell contends the trial court erred when it denied her motion for a new trial because the award had no basis in evidence and was inadequate to compensate for her injury.

CR 59(a) allows the court to grant a new trial in limited circumstances, including where damages are "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice," "there is no evidence or

reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law," or "substantial justice has not been done."[1]

To determine if the record supports the jury verdict for the purpose of deciding a motion for a new trial, we review the evidence in the light most favorable to the nonmoving party.[2] But because determining damages is within the jury's province, courts are reluctant to interfere with a jury's damage award that is fairly made.[3] "Where sufficient evidence exists to support the verdict, it is an abuse of discretion to grant a new trial."[4] "The trial court has the same discretion to set aside a verdict for inadequate damages as it has to set it aside for excessive damages."[5]

Russell contends there is no logical or discernable basis for limiting her damages for breach of fiduciary duty to $45,834.

Under CR 59(a)(7), a trial court may grant a new trial if "there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law."

Here, Russell argues once the jury determined BMT breached its fiduciary duty, the question became *when* did the breach occur, and *what* was an appropriate amount of damages. Russell contends there are only three points at which she could have been aware of the specific amount of her legal fees, and each of those points should have led the jury to conclude she was entitled to an award greater than $45,834. But

---

[1] CR 59(a)(5), (7), (9).

[2] Gestson v. Scott, 116 Wn. App. 616, 622, 67 P.3d 496 (2003).

[3] Palmer v. Jensen, 132 Wn.2d 193, 198, 937 P.2d 597 (1997).

[4] Id.

[5] Aboltin v. Heney, 62 Wash. 65, 67, 113 P. 245 (1911).

during trial, BMT presented considerable evidence of Russell's agreement to pay fees at the agreed hourly rates and costs at the conclusion of the litigation. Additionally, BMT attorney Randall Johnson testified that Russell was well aware of the effort expended on her behalf. She was in BMT's offices frequently, including on a nearly daily basis when hearings were upcoming, and they often spoke on the telephone about her case. Johnson also testified that she attended hearings and depositions in the underlying case. Other BMT attorneys familiar with the case corroborated Johnson's testimony. Johnson also testified that he and Russell discussed attorney fees and her responsibility to pay them on multiple occasions.

After hearing testimony about the extent that Russell was involved in her underlying case and the amount of work BMT performed, the jury assigned a value of $45,834 for the breach of fiduciary duty for BMT not having sent Russell monthly billing statements. The jury had BMT's invoice itemizing the hours incurred, description of work, and date of work. The exact point at which a failure to provide monthly invoices may have been the cause of any damages to Russell was squarely within the province of the jury.[6]

It is undisputed that she signed the fee agreement and that she had personal knowledge and an understanding of how much time BMT invested in the matter. It was Russell's burden to present evidence to support her claim for damages arising from

---

[6] Morse v. Antonellis, 149 Wn.2d 572, 573, 70 P.3d 125 (2003) ("A jury is free to believe or disbelieve a witness, since credibility determinations are solely for the trier of fact. Credibility determinations cannot be reviewed on appeal.").

BMT's breach of fiduciary duty.[7] She presented no evidence inconsistent with the $45,834 offset.

We conclude the trial court did not abuse its discretion in denying Russell's motion under CR 59(a)(7).

Russell contends the trial court erred when it denied her motion for a new trial under CR 59(a)(5). A trial court has the discretion to grant a new trial on some or all of the issues where damages are "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice."[8] "If the jury verdict falls within a range of proven damages, it should not be set aside as excessive."[9]

Here, the documents and witness testimony presented at trial demonstrated Russell owed BMT over $200,000. Additional evidence showed she did not receive monthly bills, but the parties had agreed that she would not be charged monthly and multiple witnesses testified that Russell was privy to discussions regarding her legal bills. Based on this evidence, the jury awarded BMT $243,829.46 and awarded Russell a $45,834 offset for her breach of fiduciary duty claim. As discussed, there are not merely three points in time when damages could be assessed. The jury was free to determine when the breach caused the limited damages. There is no showing in the record that the final judgment entered in BMT's favor was outside the range of evidence presented at trial.

---

[7] Puget Sound Marina, Inc. v. Jorgensen, 3 Wn. App. 476, 480, 475 P.2d 919 (1970).

[8] CR 59(a)(5).

[9] Alger v. City of Mukilteo, 107 Wn.2d 541, 551, 730 P.2d 1333 (1987).

We conclude the trial court did not abuse its discretion in denying a new trial under CR 59(a)(5).

Alternatively, Russell argues substantial justice has not been done.

A trial court may grant a new trial under CR 59(a)(9) where substantial justice has not been done. "Courts rarely grant reconsideration under CR 59(a)(9) for lack of substantial justice because of the other broad grounds afforded under CR 59(a)."[10]

In essence, Russell relies upon the premise that her evidence was more credible than the evidence offered by BMT, but the jury was free to determine what evidence was credible. She does not establish substantial justice has not been done.[11]

We conclude the trial court did not abuse its discretion when it denied Russell's motion for a new trial because the damages were not inadequate, there is substantial evidence in the record to justify the award, and there is no showing that substantial justice has not been done.

Affirmed.

WE CONCUR:

---

[10] Sligar v. Odell, 156 Wn. App. 720, 734, 233 P.3d 914 (2010).

[11] See Bunnell v. Barr, 68 Wn.2d 771, 777, 415 P.2d 640 (1966) (trial court and jury disagreement regarding credibility and interpretation of the evidence is an inadequate reason for granting a new trial when the jury's verdict is otherwise supported by substantial evidence).